UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 5:22-CR-92-DCR-MAS-3 |
| v. ) | |
| ) | |
| DEMARKUS LEEANTHONY NEMETZ, ) | |
| ) | |
| Defendant. ) | |

**DETENTION OPINION & ORDER**

The Indictment alleges that Defendant Demarkus Nemetz ("Nemetz") conspired to distribute 400 grams or more of fentanyl and 5 kilograms or more of cocaine in violation of 21 U.S.C. § 846, possessed with intent to distribute 400 grams or more of fentanyl and 500 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1), and committed and conspired to commit money laundering in violation of 18 U.S.C. § 1956(h) and (a)(1)(A)(i). [DE 1]. The United States orally sought detention under 18 U.S.C. § 3142(f)(1)(C) [DE 20], and the Court conducted a detention hearing on August 10, 2022. [DE 30]. Per Federal Rule of Appellate Procedure 9(a) and for the reasons discussed in this opinion, the Court grants the United States' motion for detention.

I.  **BRA FRAMEWORK**

Based on the charges, a detention presumption arises under the BRA as to both nonappearance and danger risk. 18 U.S.C. § 3142(e)(3)(A). The BRA and *United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010) frame the resulting inquiry. The presumption imposes on the defendant a threshold "burden of production"; in response, "he must introduce at least some

evidence" that he poses neither a flight nor a danger risk. *Stone*, 608 F.3d at 945; *see also United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (imposing a responsive burden on the defendant to produce "some evidence that he will not flee or endanger the community if released"); *United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (requiring the defendant to "produc[e] probative, credible evidence to rebut the presumption and support his contention that he will appear . . . and [that] he does not pose a danger"). The production burden "is not heavy," and the Government retains the ultimate burden of persuasion. *Stone*, 608 F.3d at 945. An unrebutted presumption requires detention. A rebutted presumption remains a pro-detention statutory factor. *See id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

Where a defendant rebuts the presumption, the burden shifts back to the United States. Detention premised on nonappearance requires preponderant evidence that no conditions can reasonably assure the defendant's future appearance. *See, e.g.*, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. July 18, 2006). Danger-based detention, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure community safety. 18 U.S.C. § 3142(f). The analyses are distinct. Conditions that sufficiently target nonappearance risk may not adequately address danger potential. *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2d Cir. 2001). Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be

2

effective, they depend on [the defendant's] good faith compliance."); *id.* at 1093 n.13 (observing that, barring a "replica detention facilit[y]," the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

Evidence rules do not apply to detention hearings. 18 U.S.C. § 3142(f). The focus is simply evidentiary reliability and accuracy. *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998). Given hearing informality, the Court properly considers a wide range of proof. The nature and quality of proof, though, impacts its probative value and weight in the detention calculus. The § 3142(g) factors ultimately drive the overarching analysis.

## II. ANALYSIS

Nemetz rebutted the presumption as to both risk of nonappearance and risk of danger. The United States did not establish by a preponderance of the evidence that no combination of conditions can reasonably assure that Nemetz will not appear at the proceedings in this case, so it did not overcome its burden on the issue of nonappearance. However, the United States met its burden as to risk of danger because it established by clear and convincing evidence that no conditions can reasonably assure community safety. As such, the Court grants the United States' motion for detention.

### A.  RISK OF NONAPPEARANCE

As a threshold matter, the Court finds that Nemetz put forth sufficient evidence to overcome the presumption as to risk of nonappearance. Specifically, Nemetz asserted that he successfully completed a period of parole in state court, he had never missed a court date, even when he was required to appear on charges in New Jersey, and all of his family lives in Kentucky. [Hearing Record at 14:10 – 16:00]. These facts are sufficient to overcome the light presumption burden. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (discussing that the presumption

3

imposes on the defendant a threshold "burden of production"; in response, "he must introduce at least some evidence" that he poses neither a flight nor a danger risk).

In response, the United States argued that Nemetz faces a mandatory minimum sentence of ten years if convicted of his charges, [Hearing Record at 47:30 – 47:40], which would increase Nemetz's motivation to flee. *United States v. Perez*, 2017 WL 1457949 at *6 (9th Cir. April 25, 2017) (considering significantly long prison sentences as a factor that "weighs heavily in favor of detention"). The United States also asserted that Nemetz poses a risk of nonappearance or flight because he misrepresented his employment history to the United States Probation Office ("Probation Office") during his pretrial interview. [Hearing Record at 47:45 – 48:00]. Specifically, the United States noted that Nemetz stated to the Probation Office he had been employed with Vivid Print Apparel during the three months preceding his arrest, but a signed letter from Vivid Print Apparel's human resources manager indicated that Nemetz worked there for only about a month before his arrest on the current charges. [*Id*., at 41:30 – 42:10].

The Court finds that, despite these facts, the United States did not prove by a preponderance of the evidence that Nemetz poses a risk of flight or nonappearance. Nemetz has lived in Kentucky his entire life, [Pretrial Services Report ("PSR") at 1], and all his family connections remain there. [Hearing Record, at 15:40 – 15:53]. More importantly, despite a somewhat lengthy criminal history given Nemetz' young age, he has generally appeared in Court when required. The PSR reflects no instances of failing to appear, and Nemetz points out that he traveled to Court in New Jersey when facing charges in that state. Additionally, Nemetz has no prior charges for fleeing or evading law enforcement, and he appears to have no lingering issues with substance use. Finally, Nemetz appears to have no connections outside of the state and no passport. [PSR at 2].

4

In the end, the United States did not prove by preponderance of the evidence that Nemetz poses a risk of flight or nonappearance, even assuming Nemetz misrepresented his employment history to the Probation Office during his pretrial interview. The record reflects a defendant with strong ties to Kentucky who generally shows up for Court. Further, if the Court were to release Nemetz, it would impose conditions that would add a layer of additional assurance that he would appear at future court hearings. Accordingly, detention based on Nemetz's risk of flight or nonappearance is not appropriate.

**B.    RISK OF DANGER**

Although the United States failed to overcome its burden with respect to Nemetz's risk of flight or nonappearance, the Court finds that detention is required based on Nemetz's risk of danger to the community. Initially, Nemetz overcame the presumption of detention based on the risk of danger by asserting by proffer that he had successfully completed a period of parole in Kentucky state court and had never missed court, thereby demonstrating that he could comply with court-imposed conditions. [Hearing Record at 14:45 – 15:15]. But the United States successfully rebutted that presumption by demonstrating by clear and convincing evidence that no combination of conditions will reasonably ensure community safety. Looking to the BRA's factors, 18 U.S.C. § 3142(g)(1)-(4), the Court agrees.

    **1.    Nature and Circumstances of the Offense**

The first BRA factor is the "nature and circumstances of the offense charge, including whether the offense . . . involves . . . a controlled substance [or] firearm[.]" 18 U.S.C. § 3142(g)(1). The nature and circumstances of Nemetz's current charges—conspiracy and possession with intent to distribute a very large amount of fentanyl and cocaine and money laundering—strongly favor detention.

At the detention hearing, the United States' witness, Drug Enforcement Administration ("DEA") Task Force Officer Jason Jett detailed a large-scale drug-trafficking conspiracy involving a significant amount of money and drugs. Officer Jett testified that, during his investigation of Nemetz, which began in December of 2021, investigators observed Nemetz deliver approximately $400,000 in drug proceeds to various drug couriers. [Hearing Record at 17:18 – 18:05, 24:40 – 27:52]. And during a search of a drug stash house that Nemetz used, law enforcement found approximately seven kilograms of fentanyl and three kilograms of suspected cocaine. [*Id.*, at 30:30 – 31:40].

Trafficking fentanyl and cocaine are exceptionally dangerous offenses that pose a serious risk of harm to the community. *Stone.*, 608 F.3d at 947 n.6 ("And our Court routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant is engaged in violence . . . . To be sure, drug trafficking is a serious offense that, in itself, poses a danger to the community."). And as noted, the detention presumption stemming from that charge does not vanish, even where, as here, the defendant overcomes the initial presumption that he poses a danger to society. *Stone*, 608 F.3d at 945. Moreover, the incredibly large quantity of the drugs Nemetz allegedly conspired to distribute further increases his risk of danger to the community. *See United States v. Santiago-Pagan*, No. 1:08-CR-0424-01, 2009 WL 1106814, at *7 (M.D. Pa. Apr. 23, 2009) (concluding that the defendant's alleged involvement in the distribution of "a large quantity of narcotics cuts strongly against his motion for release pending trial" because "[t]he seriousness of the crimes alone . . . allows the court to draw the inference that defendant will simply continue his alleged narcotics activity if released") (collecting supportive cases).

Nemetz's charges and the circumstances surrounding his alleged crimes indicate a high risk of danger to the community, so this factor weights heavily towards detention.

### 2. Weight of the Dangerousness Evidence

The second factor gauges "the weight of the evidence against the person." 18 U.S.C. § 3142(g)(2) (directing courts to consider "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" and whether, at the time of the current offense the person was on probation or pretrial release). "This factor goes to the weight of evidence of dangerousness, not the weight of the evidence of defendant's guilt." *Stone*, 608 F.3d at 948.

Although codified as a distinct factor, consideration of the weight of danger evidence against Nemetz overlaps with consideration of the third and fourth factors, Nemetz's history and characteristics and the nature and seriousness of the danger to any person or the community that would be posed by Nemetz's release. 18 U.S.C. § 3142(g)(3),(4).

Nemetz's criminal history amounts to strong evidence of dangerousness. Although Nemetz is relatively young, his criminal history reflects a number of serious drug-trafficking charges. Nemetz was convicted of first-degree possession of a cocaine, second-degree trafficking in an unspecified controlled substance, and trafficking in marijuana in 2017. [PSR at 3]. That same year, he was also convicted of second-degree possession of a controlled substance. [PSR at 4]. Nemetz was also convicted of second-degree possession of a controlled substance and third-degree possession of an unspecified controlled substance stemming from two different events in 2018. [PSR at 4-5]. Particularly concerning, however, is that Nemetz was under active state probation supervision for his charge of third-degree possession of an unspecified controlled substance at the time he allegedly committed the instant offense, and the PSR indicates that Nemetz violated

7

conditional release in state court on at least two other occasions. [PSR at 3, 5]. *See* 18 U.S.C. § 3142(g)(3)(B) (directing the court to consider "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentence, appeal, or completion of sentence . . .").

This serious drug-trafficking history, along with the allegations that Nemetz committed the instant crime while on state probation supervision, amounts to a significant sum of evidence indicating that Nemetz' would pose a high risk of danger to the community if he were to be released. This factor weighs strongly in favor of detention.

### 3.  **History and Characteristics**

The third BRA factor considers the history and characteristics of the defendant. 18 U.S.C. § 3142(g)(3) (directing courts to consider "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" and whether, at the time of the current offense the person was on probation or pretrial release).

As discussed in the Court's analysis of the second BRA factor, Nemetz's prolific, albeit short, history of drug trafficking, which he continued even while on state probation supervision, demonstrates that Nemetz is deeply invested in criminal activity and is not likely to be dissuaded by legal consequences. The third BRA factor likewise strongly favors detention.

### 4.  **Nature and Seriousness of the Danger Risk**

The fourth and final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). Like the other BRA factors, this factor tips in favor of detention.

As the Court discussed in its analysis of the second BRA factor, the potential danger to the community posed by Nemetz's continued drug trafficking is significant, especially given the large quantity of drugs he is alleged to have possessed and intended to distribute. *See United States v. Santiago-Pagan*, No. 1:08-CR-0424-01, 2009 WL 1106814, at *7 (M.D. Pa. Apr. 23, 2009) (concluding that the defendant's alleged involvement in the distribution of "a large quantity of narcotics cuts strongly against his motion for release pending trial" because "[t]he seriousness of the crimes alone . . . allows the court to draw the inference that defendant will simply continue his alleged narcotics activity if released") (collecting supportive cases). Moreover, Nemetz's willingness to participate in significant drug-trafficking while on state probation supervision shows that he is not likely to be discouraged from engaging in dangerous conduct if released before trial. *See United States v. Pina-Aboite*, 97 F. App'x 832, 836 (10th Cir. 2004) (emphasizing that "the danger-to-the-community factor is simply about physical violence; the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community").

The risk of releasing Nemetz is too great, and this final factor also weighs heavily in favor of detention.

### 5. Availability of Conditions Addressing Danger Risk

Finally, for the reasons discussed, the Court finds that Nemetz presents a high risk of continuing to engage narcotics-related crimes if released. As such, her release presents a serious threat to community safety. While the Court could impose conditions aimed at monitoring Nemetz's location if released, the court is unconvinced that those conditions or any others would reasonably ameliorate the risk of community danger that Nemetz's release would create. This is especially true given the nature of Nemetz's charged drug-trafficking crimes, which permits stationary involvement and discrete activity. *See, e.g.*, *United States v. Nova*, No. CR 16-060-02 S, 2016 WL 6471205, at *2 (D.R.I. Nov. 1, 2016) (finding that electronic monitoring and home

9

detention conditions would not be effective to mitigate danger where the defendant could easily participate in the charged heroin distribution scheme from his home).

In summary, the Court finds that the United States has shown, by clear and convincing evidence, that no conditions can reasonably assure the safety of others or the community. Accordingly, detention is warranted based on Nemetz's risk of danger to the community.

### III. CONCLUSION

In sum, the Court finds that the United States proved by clear and convincing evidence that Nemetz poses a danger to the community that cannot be mitigated with conditions of release. Therefore, the BRA requires that Nemetz remain in detention pending trial.

Accordingly, the Court grants the United States' oral detention motion. The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Entered this 15th day of August, 2022.

